Sherilyn A. Olsen, #9418
Burke R. Gappmayer #11088
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Fax: (801) 799-5700
solsen@hollandhart.com
brgappmayer@hollandhart.com
*Proposed Attorneys for Debtors-In-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 20-22804 |
| PENUMBRA BRANDS, LLC | Chapter 11 |
| Debtor-In-Possession, | Honorable Joel T. Marker |

### EMERGENCY MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION LIEN; (III) AUTHORIZING THE USE OF CERTAIN PREPETITION ACCOUNTS; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Penumbra Brands LLC (the "**Debtor**") moves the Court, pursuant to sections 105(a), 361, 362, 363, 506, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1, 4001-2, and 9013-1 (the "**Local Rules**"), for entry of interim for an interim order (I) authorizing the use of cash collateral; (II) granting adequate protection; (III) authorizing the use of certain prepetition accounts (identified

below), (IV) scheduling a final hearing; and (V) and granting related relief (the "**Motion**").  In

support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334 and

the automatic reference of all bankruptcy cases to this Court pursuant to Rule 83-7.1 of the Local

Rules of Practice of the United States District Court for the District of Utah.

2.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3.      The Debtor's corporate headquarters and its executive level and senior

management are all located in North Salt Lake City, Utah and have been for the 180 days

immediately prior to the Petition Date.  Accordingly, venue of these cases and related

proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.      The Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code

on May 8, 2020 (the "**Petition Date**").  The Debtor continues in possession of its property and is

operating and managing its business and affairs as debtor-in-possession pursuant to sections

1107 and 1108 of the Bankruptcy Code.

5.      Penumbra Holdings filed a voluntary petition under chapter 11 of the Bankruptcy

Code on May 8, 2020 in Case No. 20-22806. Debtor and Penumbra Holdings are collectively

referred to herein as the "**Companies**."

6.      No trustee or examiner has been appointed in these cases.  No official committee

of unsecured creditors has yet been formed.

7.     The Debtor hereby incorporates by reference the factual background set forth in the Declaration of Gentry W. Jensen in Support of Chapter 11 Petition and Various First Day Motions ("**Jensen Declaration**") filed contemporaneously herewith and which includes, among other things, a detailed description of the Debtor's business and affairs, the Debtor's capital structure and prepetition indebtedness, and the events leading to the commencement of these cases.  Further, the Debtor repeats and sets forth relevant background for purposes of this Motion below.

8.     In July of 2018, the Debtor refinanced obligations owed to HTGC pursuant to commercial loans funded by BBVA USA f/k/a Compass Bank as administrative agent for several banks and other financial institutions or entities from time to time party thereto ("**BBVA**").  In conjunction with the Loans, the Debtor (and Penumbra Holdings, where applicable, as guarantor of the Loans) entered into the following documents with BBVA:

a.     The Credit Agreement dated as of July 27, 2018 (the "**Credit Agreement**").

b.     The: (i) Revolving Note in favor of BBVA dated July  27, 2018 in the original face amount of $3,000,000 (the "**Revolving Note**") and (ii) Term Loan Note in favor of BBVA dated July 27, 2018 in the original face amount of $22,000,000 (the "**Term Note**").  The amounts owed pursuant to the Revolving Note and the Term Note are collectively referred to as the "**BBVA Loans**."

c.     The Guarantee and Collateral Agreement dated July 27, 2018 in favor of BBVA (the "**Collateral Agreement**").

d.      The Intellectual Property Security Agreement dated as of July 27, 2018

(the "**IP Security Agreement**").

9.      According to BBVA, the principal amount owed by the Debtor as of the Petition

Date is approximately $20,350,000 (the "**BBVA Indebtedness**").  Pursuant to the Collateral

Agreement and the IP Security Agreement, the Companies granted BBVA a lien on and security

interest in all personal property of the Companies, including certain intellectual property

identified in the Collateral Agreement and in the IP Security Agreement (collectively, the

"**BBVA Collateral**").  BBVA perfected its security interest in the BBVA Collateral, in part, by

filing a UCC Financing Statement with the Delaware Department of State, UCC Financing

Number 2018 5132762.

10.     It is the Debtor's understanding that, other than the Credit Reserve Account

(defined herein) held by JPMorgan Chase Bank, N.A. ("**Chase**"), BBVA is the only creditor that

asserts a security interest in the BBVA Collateral.

11.     In light of the unsuccessful attempts to resolve non-monetary defaults with BBVA

in December 2019 and January 2020, following receipt of the Notice of Default Letter from

BBVA, and grave cash flow concerns resulting from the unforeseeable but increasingly dire

impact of Covid-19, the board of directors became concerned that BBVA would offset the

amounts owed to BBVA against the cash Penumbra LLC held on deposit with BBVA.  If BBVA

took those steps, Penumbra LLC would have had no choice, but to immediately close its business

operations and terminate its 56 employees.

12.     As a precaution, Penumbra LLC began transferring its operating funds from

BBVA to a non-primary pre-existing operating account at Chase. More specifically, through a

series of transfers between March 20 and 31, 2020, Penumbra LLC transferred $2,090,000 (the

"**BBVA Funds**") to Chase. At the time of the transfer of the BBVA Funds, Penumbra LLC had

$385,952.09 on deposit with Chase (the "**Chase Funds**").

13.     Debtor previously maintained its primary operating account at BBVA.  As of the

Petition Date, Debtor maintains its primary operating account at Chase (the "**Chase Operating**

**Account**").

14.     At the end of March 2020, Congress passed, and the President signed into law the

Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**").  Pursuant to the

Paycheck Protection Program under the CARES Act, Penumbra LLC applied for and obtained a

paycheck protection program loan (the "**PPP Loan**") from Chase guaranteed by the U.S. Small

Business Administration ("**SBA**").  On or about April 15, 2020, Penumbra LLC obtained PPP

Loan funds from Chase in the amount of $620,883 (the "**PPP Funds**").   The PPP Funds were

deposited into the Chase Operating Account (the same account where the Chase Funds and the

BBVA Funds were deposited).  The PPP Loan is unsecured.

15.     Collectively, the "PPP Funds," "BBVA Funds," "Chase Funds," any cash on

deposit with Chase, and any cash generated post-petition from the sale of pre-petition inventory

are referred to as the "**Cash Collateral**."

16.     The Debtor maintains the following accounts with Chase:

     a.     the Chase Operating Account,

     b.     A non-primary merchant account where customers' online purchases were

processed (the "**Chase Merchant Account**"),

     c.     A business credit card accounts (the "**Chase Credit Card**"), and

d.      A non-primary cash reserve account or savings account and which holds

the security for any outstanding balance on the Chase Credit Cards ("**Cash Reserve**

**Account,**" together with the Chase Operating Account, Chase Merchant Account, Chase

Credit Card Account, the "**Chase Accounts**").

17.      The Chase Credit Card is secured by funds held by Chase in the Cash Reserve

Account.  More specifically, Chase holds $100,000, the maximum Chase Credit Card balance

amount, as security for the amounts owed on the Chase Credit Card.  As of the petition date,

$10,948.42 was owed on the Chase Credit Card.  It is the Debtor's understanding that Chase

does not assert a lien in any other assets of the Debtor.

18.      Pre-petition Debtor utilized the Chase Accounts in the ordinary course of its

business operations.

19.      As of the petition date, Penumbra LLC maintained the following accounts and

balances:

a.      BBVA Operating Account $3,909.82.

b.      BBVA Merchant Account $2,163.27.

c.      Chase Operating Account $509,514.31.

d.      Chase Cash Reserve Account $1,861,311.07.

e.      Chase Merchant Account $55,022.48.

20.      The amounts held in the BBVA Operating Account and the BBVA Merchant

Account as of the Petition Date are referred to as the "**BBVA Petition Funds**."  The amounts

held in the Chase Operating Account, Chase Cash Reserve Account, and Chase Merchant

Account as of the Petition Date are collectively referred to as the "**Chase Petition Funds**."

6

21.     According to BBVA, BBVA is owed the principal amount of $20,350,000 on the BBVA Loans.

22.     As of the petition date, Debtor believes its assets are worth less than the amounts owed to BBVA.

23.     The Debtor believes BBVA holds security interests in the Debtor's personal property including inventory, accounts receivable, and proceeds derived from them. It is unclear, however, whether BBVA maintains a properly perfected security interest in the funds on deposit at Chase where the BBVA Funds have been comingled with the Chase Funds and the PPP Funds. The Debtor does not believe that this issue needs to be resolved at this time because BBVA is adequately protected given that Debtor proposes to (i) allow BBVA to continue to hold the Petition BBVA Funds and (ii) provide BBVA with a replacement lien in post-petition assets to the same extent and priority as existed prepetition, for all Cash Collateral actually expended during the Interim Period (as subsequently defined herein) in which BBVA held a properly perfected secured interest. This will allow the Court to resolve later whether BBVA holds a security interest in the Cash Collateral.

24.     Due to the emergency nature of this filing, the undersigned has not yet had a full opportunity to review all loan agreements or related documents associated with the Loans and/or funds held at BBVA. At this point, the Debtor relies upon its understanding that the underlying loan documents, if any, are secured by the purported perfected liens on Debtor's personal property and intellectual property, pursuant to the Collateral Agreement and IP Security Agreement and corresponding UCC Financing Statement. The Debtor reserves the right to

challenge the extent and perfection of any liens at a later date.  In addition, the Debtor reserves

the right to challenge the value of the purported collateral secured by any liens.

## **RELIEF REQUESTED**

25.    Pursuant to this Motion, on an interim basis, the Debtor seeks authority to use the

Cash Collateral in the ordinary course of business.  The Debtor proposes to use the Cash

Collateral in accordance with a formal budget (the "**Budget**"), prepared by the Debtor which is

attached as **Exhibit A** hereto.  The Debtor proposes to utilize Cash Collateral on an interim basis

from the Petition Date through June 13, 2020 (the "**Interim Period**").  The Cash Collateral will

be used to pay (i) amounts authorized for payment pursuant to other first day motions filed

concurrently herewith, (ii) operating costs and expenses, and (iii) other administrative and

bankruptcy related expenses projected to be incurred during the Interim Period, as set forth in the

Budget. Because the amount and timing of all expenses cannot be predicted exactly, the Debtor

proposes that it be considered in compliance with the Budget so long as the Debtor does not

exceed by the Budget by more than 10% per line item (on a cumulative basis).

26.    Further, the Debtor seeks the authority to continue the use of its prepetition bank

accounts including the accounts at BBVA and Chase, cash management systems, treasury

management systems, or business forms (collectively, the "**Existing Accounts**").  Allowing the

Debtor to continue to utilize the Existing Accounts post-petition will allow the Debtor to

continue to receive payments on existing and new orders without interruption or delay.

27.    The Debtor requests a preliminary hearing on an emergency basis to approve this

interim request pursuant to Bankruptcy Rule 4001(b)(2) and that a final hearing be set at the

Court's discretion but no later than thirty (30) days after entry of an Order on this Motion.

28.     Pursuant to L.B.R. 4001-2, the following also addresses each of the provisions identified in L.B.R. 4001-2 and identifies the location of the related provisions in the proposed Interim Order attached hereto as **Exhibit B**.  In the event the information set forth below conflicts or is otherwise inconsistent with the terms of the Interim Order, the Interim Order shall govern.

| **L.B.R. 4001-2 Provisions** | | |
|---|---|---|
| **Required Information/ Highlighted Provision** | **Summary** | **Location in Interim Order** |
| Cross-collateralization | None. Adequate protection liens on post-petition property will be granted only to protect against diminution in value of prepetition collateral. | N/A |
| Provisions or findings of fact regarding validity, perfection or amount of secured party's lien or debt that bind the estate or all parties in interest | None. | N/A |
| 552(b) Waivers | None. | N/A |
| Waivers of avoidance actions | None. | N/A |
| Adequate protection provisions that create liens on claims for relief arising under sections 544, 545, 547, 548, and 549 of the Bankruptcy Code | None. | N/A |
| Provisions deeming prepetition secured debt to be post-petition debt or that use post-petition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 552(b). | None. | N/A |

| L.B.R. 4001-2 Provisions | | |
|---|---|---|
| **Required Information/ Highlighted Provision** | **Summary** | **Location in Interim Order** |
| Provisions that provide disparate treatment for professionals | None. | N/A |
| Provisions that prime any secured lien without consent of the lienor | None. | N/A |

## BASIS FOR RELIEF REQUESTED

1.    **Use of Cash Collateral**

a.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business.  To use cash collateral, however, one of two conditions must be satisfied: (1) each entity with an interest in the cash collateral consents to its use, or (2) the court, after notice and a hearing, authorizes such use.  11 U.S.C. § 363(c)(2). In the latter instance, the court is instructed to prohibit or condition the use of cash collateral as is necessary to provide adequate protection for the interests of the secured party.  11 U.S.C. § 363(e).  After notice and a hearing, the Court may approve a debtor's use of cash collateral without the secured creditor's consent, but "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bank. P. 4001(b).

b.    In order for a court to authorize the use of cash collateral over a secured party's objection, the secured creditor's interest in the cash collateral must be adequately protected. *See In re Bluejay Properties, LLC*, 512 B.R. 390, 2014 WL 948631, at *3 (B.A.P. 10th Cir. Mar. 12, 2014).  The debtor has the burden of proof on the issue of adequate protection.  See 11 U.S.C. 363(e); *Consolidated Capital Income Trust v. Colter, Inc.*, 47 B.R. 1008, 1010 (D. Colo. 1987);

*In re Diaconx Corp.*, 69 B.R. 333, 338 (Bankr. E.D. Pa. 1987) (burden of proof of proving

adequate protection is on debtor seeking to use cash collateral).  In the context of a cash

collateral motion, the purpose of adequate protection is to protect the secured lender from a

diminution in the value of its collateral during the period in which it is prevented from

foreclosing upon such collateral by the automatic stay.  *In re Dalton Resources, Inc.*, 54 F.3d

722, 728-30 (11th Cir. 1995).  As set forth in Section 361, adequate protection may be provided

by making cash payments to a creditor, granting a creditor additional or replacement liens, or

granting a creditor such other relief as will result in the realization of the indubitable equivalent

of its interest in property.  *See In re Bluejay Properties*, at *3.

      c.      Courts have found that a secured creditor is adequately protected where the level

of the secured creditor's collateral is not decreasing over time.  *In re Dynaco Corp.*, 162 B.R.

389, 394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was

authorized to use cash collateral where level of collateral was not declining). Adequate

protection is intended to protect against a decline in a creditor's security cushion, it is not

intended to allow a creditor to improve the security cushion it had prepetition. *See In re Gallegos

Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995).

      d.      The United States Court of Appeals for the Tenth Circuit has recognized that

access to cash collateral at the beginning of a chapter 11 case is critical to the prospects of a

successful reorganization and that a bankruptcy court must be flexible in granting adequate

protection:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have
> proposed to deal with cash collateral ***for the purpose of enhancing
> the prospects of reorganization.  This quest is the ultimate goal of
> Chapter 11. Hence, the Debtors' efforts are not only to be***

> *encouraged, but also their efforts during the administration of*
> *the proceeding are to be measured in light of that quest. Because*
> *the ultimate benefit to be achieved by a successful reorganization*
> *inures to all the creditors of the estate, a fair opportunity must be*
> *given to the Debtors to achieve that end.*  Thus, while interests of
> the secured creditor whose property rights are of concern to the
> court, the interests of all other creditors also have bearing upon the
> question of whether use of cash collateral shall be permitted during
> the early stages of administration.
>
> The first effort of the court must be to insure the value of the
> collateral will be preserved.  Yet, prior to confirmation of a plan of
> reorganization, the test of that protection is not by the same
> measurements applied to the treatment of a secured creditor in a
> proposed plan.  *In order to encourage the Debtors' efforts in the*
> *formative period prior to the proposal of a reorganization, the*
> *court must be flexible in applying the adequate protection*
> *standard.*  In doing so, however, care must be exercised to insure
> that the vested property rights of the secured creditor and the
> values and risks bargained for by that creditor prior to bankruptcy
> are not detrimentally affected.

*In re O'Connor*, 808 F.2d 1393, 1397-1398 (10th Cir. 1987) (emphasis added) (internal citations

omitted).

　　　　e.　　　In this case, ample cause exists to grant the Debtor authority to use the Cash

Collateral during the Budget Period.  Without the ability to use the Cash Collateral, the Debtor

will not be able to successfully transition into Chapter 11 and otherwise preserve and maximize

the value of its assets for the benefit of its creditors and the estate.  The Debtor's primary source

of cash and ability to maximize value in this case is dependent upon collecting future revenue

from the sale of inventory and the purchase of new inventory.   Thus, the use of the Cash

Collateral is essential to Debtor's ability to efficiently preserve and maximize the value of its

assets as it transitions into Chapter 11.

f.      During the Budget Period, with the benefit of the automatic stay and access to the Cash Collateral, the Debtor intends to focus on increasing its revenues from the continued acquisition and sale of inventory.  Without access to the Cash Collateral at this critical point in the case, however, Debtor will be unable to reorganize its business and maximize value for the benefit of its creditors and the estate.

g.      The Debtor submits that whatever interests that BBVA may have in the Cash Collateral are adequately protected by virtue of the adequate protection provided for in the proposed Interim Order and Final Order.  To protect against diminution in the value of the prepetition collateral, the Debtor proposes to (i) allow BBVA to continue to hold the Petition BBVA Funds and (ii) provide BBVA with a replacement lien in post-petition assets to the same extent and priority as existed prepetition, for all cash collateral actually expended during the duration of the interim cash collateral Order.

h.      In addition, pursuant to section 105(a) of the Bankruptcy Code, the Bankruptcy Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  The Debtor respectfully submits that the entry of an order authorizing use of cash collateral under the circumstances in necessary and appropriate to enable them to continue operating and to maximize the value of its assets and should be approved.

i.      Likewise, the Debtor submits that the ability to continue the use of its Existing Accounts is necessary and appropriate to enable the Debtor to continue operating, maximize the value of its assets, and contribute toward a successful reorganization.

j.      The Debtor further submits that immediate relief in the form of the proposed Interim Order is necessary to avoid irreparable harm during the Interim Period.

k.     Based upon the foregoing, using cash collateral is necessary and appropriate, is in the best interests of the Debtor and its estate, and should be authorized.

**2.     Final Hearing and Notice Procedures**

a.     The Debtor proposes that it serve a copy of the Interim Order within three business days of its entry, together with a notice of the final hearing on the Motion (the "**Final Hearing Notice**"), by overnight mail, facsimile, email or hand-delivery, on the Notice Parties (defined below) and on any party that files a request for notice pursuant to Rule 2002 of the Bankruptcy Rules.  Any objections to the Motion or the entry of the Final Order shall (i) be in writing, (ii) be filed with the Bankruptcy Court by no later than 4 p.m. on the day that is not less than seven calendar days before the final hearing (the "**Objection Deadline**"), and (iii) be served upon the following parties so as to be actually received by the Objection Deadline: (a) the Office of the United States Trustee for the District of Utah, (b) counsel for the Debtor: Holland & Hart LLP, 222 S. Main St., Suite #2200, Salt Lake City, UT 84101, Attn: Sherilyn A. Olsen (c) counsel for BBVA, (d) Chase, and (e) counsel for any official committee that may be appointed in these cases, and (e) all parties who have filed a request for notice pursuant to Bankruptcy Rule 2002.

## NOTICE

Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Utah, (ii) counsel for BBV, (iii) Chase, (iv) the creditors appearing on the Debtors' consolidated list of top 20 unsecured creditors, and (v) all parties requesting notices pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order

and, following the final hearing on this Motion, the Final Order granting the relief requested

herein and such other and further relief as the Court deems just and proper.

DATED this 11th day of May, 2020.

HOLLAND & HART LLP


/s/ Sherilyn A. Olsen
Sherilyn A. Olsen
*Proposed Attorneys for Debtor-In-Possession*

14624555_4

**Penumbra Brands**

| Beginning Date | 10-May-20 | 17-May-20 | 24-May-20 | 31-May-20 | 07-Jun-20 | 14-Jun-20 | 21-Jun-20 | 28-Jun-20 | 05-Jul-20 | 12-Jul-20 | 19-Jul-20 | 26-Jul-20 | 02-Aug-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week End Date** | **16-May-20** | **23-May-20** | **30-May-20** | **06-Jun-20** | **13-Jun-20** | **20-Jun-20** | **27-Jun-20** | **04-Jul-20** | **11-Jul-20** | **18-Jul-20** | **25-Jul-20** | **01-Aug-20** | **08-Aug-20** |
| **Cash Movement** | | | | | | | | | | | | | |
| **Operating Inflows** | | | | | | | | | | | | | |
| Online Sales- Sweep from merchant accounts | - | - | 225,000 | - | - | - | - | 225,000 | - | - | - | 225,000 | - |
| A/R Receipts- Amazon | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| A/R Receipts- Brightstar | - | - | - | - | - | - | 45,450 | - | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| A/R Receipts- Ice Mobility | - | - | - | 10,250 | 3,937 | 1,626 | 11,210 | 43,240 | 17,000 | 17,000 | 17,000 | 163,050 | 17,000 |
| A/R Receipts- Tessco | 36,748 | 10,725 | 107,450 | 22,317 | 9,985 | 50,952 | 43,100 | 28,957 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| A/R Receipts- VoiceComm | - | - | 215,752 | 116,263 | 62,836 | - | 168,894 | - | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| A/R Receipts- Other | 1,230 | 6,673 | 595 | - | - | 16 | 7,118 | 26,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| **Total Operating Inflows\*** | **38,478** | **17,898** | **549,297** | **149,330** | **77,258** | **53,094** | **276,272** | **323,697** | **175,500** | **175,500** | **175,500** | **546,550** | **175,500** |
| **Operating Outflows** | | | | | | | | | | | | | |
| Payroll | - | 150,000 | - | 225,000 | - | 75,000 | - | 150,000 | - | - | 150,000 | - | 150,000 |
| Operations | 273,000* | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 |
| Marketing & Sales | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Research & Development | - | - | - | 3,233 | - | - | - | 3,233 | - | - | - | 3,233 | - |
| Legal & Professional Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Rent & Facilities | - | 1,800 | 22,874 | 1,100 | - | 1,800 | 20,575 | 1,100 | - | 1,800 | 22,874 | - | 1,100 |
| Office Expense | - | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| IT & Computers | - | - | 6,200 | - | - | 6,200 | - | - | 6,200 | - | - | 6,200 | - |
| Company Credit Cards | - | - | - | 50,000 | 100,000 | - | - | 50,000 | 100,000 | - | - | 50,000 | 100,000 |
| Fees & Taxes | - | 2,000 | - | - | 500 | 2,000 | - | - | - | 500 | 2,000 | - | - |
| Other Expenses | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Outflows** | **273,000** | **249,400** | **124,674** | **374,933** | **196,100** | **180,600** | **116,175** | **299,933** | **202,300** | **99,400** | **268,474** | **155,033** | **346,700** |
| **Net Cash Flow** | **(234,522)** | **(231,502)** | **424,623** | **(225,603)** | **(118,842)** | **(127,507)** | **160,097** | **23,765** | **(26,800)** | **76,100** | **(92,974)** | **391,518** | **(171,200)** |
| **Cash Accounts** | | | | | | | | | | | | | |
| **Operating Account** | | | | | | | | | | | | | |
| **Ending Balance Operating Account** | **338,591** | **107,088** | **531,711** | **306,109** | **187,267** | **59,760** | **219,857** | **243,622** | **216,822** | **292,922** | **199,948** | **591,465** | **420,265** |
| **Claims Processing Account** | | | | | | | | | | | | | |
| **Ending Balance Claims Processing Account** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** | **84,710** |
| **Merchant Account** | | | | | | | | | | | | | |
| **Ending Balance Merchant Account** | **97,166** | **137,166** | **17,166** | **45,166** | **85,166** | **125,166** | **165,166** | **33,166** | **73,166** | **113,166** | **153,166** | **21,166** | **61,166** |
| **Reserve Account** | | | | | | | | | | | | | |
| **Ending Balance Reserve Account** | **1,861,311** | **1,861,311** | **1,861,311** | **1,861,911** | **1,861,911** | **1,861,911** | **1,861,911** | **1,862,511** | **1,862,511** | **1,862,511** | **1,862,511** | **1,863,111** | **1,863,111** |
| **Operating + Reserve + Merchant accounts** | **2,297,068** | **2,105,565** | **2,410,188** | **2,213,186** | **2,134,344** | **2,046,837** | **2,246,934** | **2,139,299** | **2,152,499** | **2,268,599** | **2,215,625** | **2,475,742** | **2,344,542** |

*This Operations expense assumes the Court grants the Debtor's proposed Motion to Pay Critical Vendors and that Penumbra pays the full amounts identified in the Motion.



EXHIBIT

A

*Order Prepared and Submitted by:*
Sherilyn A. Olsen, #9418
Burke R. Gappmayer #11088
Holland & Hart LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Fax: (801) 799-5700
solsen@hollandhart.com
brgappmayer@hollandhart.com
*Proposed Attorneys for Debtors-In-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 20-22804 |
| PENUMBRA BRANDS, LLC | Chapter 11 |
| Debtor-In-Possession, | Honorable Joel T. Marker |

## INTERIM ORDER GRANTING EMERGENCY MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) AUTHORIZING THE USE OF CERTAIN PREPETITION ACCOUNTS; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

**THIS CAUSE** was scheduled for hearing before the Court upon the Emergency Motion

of Debtor for Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Granting

Adequate Protection; (III) Authorizing the Use of Certain Prepetition Accounts, (IV) Scheduling



*a Final Hearing; and (V) Granting Related Relief* (the "**Motion**") filed by the Debtor Penumbra

Brands LLC ("**Debtor**") on May 11, 2020.[1]  An interim hearing was held on the Motion on May

13, 2020, at which Sherilyn A. Olsen appeared on behalf of the Debtor.  Other parties present

noted their appearances on the record.

From the pleadings, evidence presented, the record in the case, and the representations

and agreements of the relevant parties, it appears to the Court that the relief requested is (a)

justified and necessary in part pursuant to the terms and conditions set forth below, (b)

reasonable and appropriate, and (c) in the best interests of the bankruptcy estate and its creditors

and should be approved on a limited basis.

**THEREFORE**, based upon the Motion, the record in this matter, and the representations

of counsel, the Court makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF**

**LAW** for the limited purpose of this interim order:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, as this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.    The Debtor filed a voluntary petition seeking relief under Chapter 11 of the

Bankruptcy Code on May 8, 2020 (the "**Petition Date**"), Case No. 20-22804 (the "**Bankruptcy**

**Case**"), and currently operates as Debtor-in-Possession.

C.    The Debtor is a limited liability company organized under the laws of the State of

Delaware, with a principal place of business in North Salt Lake City, Utah.  The Debtor designs,

manufacturers, packages, distributes, and sells accessories for mobile devises.

D.    On or about May 11, 2020, the Debtor filed the Motion.

---

[1] Unless otherwise defined herein, defined terms shall have the meanings set forth in the Motion.

E.      In June 2018, Debtor refinanced its obligations pursuant to commercial loans funded by BBVA USA f/k/a Compass Bank, as administrative agent for several banks and other financial institutions or entities from time to time party thereto ("**BBVA**").

F.      On July 27, 2018, the Debtor (i) entered into that certain Credit Agreement dated as of July 27, 2018 with BBVA (the "**Credit Agreement**") with respect to certain commercial loans as identified therein;  (ii) executed in favor of BBVA that certain   Revolving Note in the original face amount of $3,000,000 (the "**Revolving Note**"); (iii) executed in favor of BBVA that certain Term Loan Note in the original face amount of $22,000,000 (the "**Term Note,**" and, together with the Revolving Note, the "**BBVA Loans**"); (iv) entered into that certain Guarantee and Collateral Agreement in favor of BBVA with Penumbra Holdings (together with Debtor, the "**Companies**") as Guarantor (the "**Collateral Agreement**"); and (v) entered into that certain Intellectual Property Security Agreement with BBVA (the "**IP Security Agreement**").

G.      Pursuant to the Collateral Agreement and the IP Security Agreement, BBVA was granted a lien on and security interest in all personal property of the Companies, including certain intellectual property identified in the Collateral Agreement and in the IP Security Agreement (collectively, the "**BBVA Collateral**").

H.      BBVA perfected its security interest in the BBVA Collateral, in part, by filing a UCC Financing Statement with the Delaware Department of State, UCC Financing Number 2018 5132762.

I.      Debtor previously maintained its primary operating account at BBVA.  As of the Petition Date, Debtor maintains its primary operating account at JP Morgan Chase Bank ("**Chase,**" and such account the "**Chase Operating Account**").  Through a series of transfers

3

between March 20 and 31, 2020, Debtor transferred $2,090,000 (the "**BBVA Funds**") to Chase. At the time of the transfer of the BBVA Funds, Debtor had $385,952.09 on deposit with Chase (the "**Chase Funds**").

J.      At the end of March 2020, Congress passed, and the President signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**").  Pursuant to the Paycheck Protection Program under the CARES Act, Penumbra LLC applied for an obtained a paycheck protection program loan (the "**PPP Loan**") from Chase guaranteed by the U.S. Small Business Administration ("**SBA**").  On or about April 15, 2020, Penumbra LLC obtained PPP Loan funds from Chase in the amount of $620,883 (the "**PPP Funds**").

K.      The PPP Funds were deposited into the Chase Operating Account (the same account where the Chase Funds and the BBVA Funds were deposited).

L.      Collectively, the "PPP Funds," "BBVA Funds," "Chase Funds," any cash on deposit with Chase, and any cash generated post-petition from the sale of pre-petition inventory are referred to as the "**Cash Collateral**."

M.      The Debtor also maintains the following accounts with Chase:

a.      non-primary operating account (the "**Chase Operating Account**"),

b.      a non-primary merchant account where customers' online purchases were processed (the "**Chase Merchant Account**"),

c.      A business credit card accounts (the "**Chase Credit Card**"), and

d.      A non-primary cash reserve account or savings account and which holds the security for any outstanding balance on the Chase Credit Cards ("**Cash**

4

**Reserve Account**," together with the Chase Operating Account, Chase Merchant Account, Chase Credit Card Account, the "**Chase Accounts**").

N.    The Chase Credit Card is secured by funds held by Chase in the Cash Reserve Account.  More specifically, Chase holds $100,000, the maximum Chase Credit Card balance amount, as security for the amounts owed on the Chase Credit Card.  As of the petition date, $10,948.42 was owed on the Chase Credit Card.  It is the Debtor's understanding that Chase does not assert a lien in any other assets of the Debtor.

O.    Pre-petition Debtor utilized the Chase Accounts in the ordinary course of its business operations.

P.    As of the petition date, Penumbra LLC maintained the following accounts and balances:

a.    BBVA Operating Account $3,909.82.

b.    BBVA Merchant Account $2,163.27.

c.    Chase Operating Account $509,514.31.

d.    Chase Cash Reserve Account $1,861,311.07.

e.    Chase Merchant Account $55,022.48.

Q.    The amounts held in the BBVA Operating Account and the BBVA Merchant Account as of the Petition Date are referred to as the "**BBVA Petition Funds**."  The amounts held in the Chase Operating Account, Chase Cash Reserve Account, and Chase Merchant Account as of the Petition Date are collectively referred to as the "**Chase Petition Funds**."

R.    According to BBVA, BBVA is owed the principal amount of $20,350,000 on the BBVA Loans.

5

S.      As of the petition date, Debtor believes its assets are worth less than the amounts owed to BBVA.

T.      The Debtor believes that a continuation of the Debtor's operations and reorganization of its affairs will generate the greatest source of funds for its creditors, including BBVA.  In order to continue and maintain its operations, the Debtor will be required to incur certain operating expenses, including, *inter alia*, payroll, utilities, rent, insurance, purchasing inventory, and other operating expenses, to remain in business and proceed with the reorganization contemplated in the Bankruptcy Case.

U.      The Debtor's sole source of income is through continued operations, including the sale of inventory and the collection of outstanding accounts receivable, and must use accounts receivable and inventory to fund its necessary expenses of operation.  The Cash Collateral may or may not include the BBVA Collateral.

V.      The terms and conditions of this Order will provide adequate protection of the interests, if any, of BBVA for the Debtor's interim use of the Cash Collateral.

W.      By proposing the use of the Cash Collateral pursuant to this Order and the Approved Budget, the Debtor has exercised prudent business judgment consistent with its fiduciary duties.

X.      The Debtor seeks the authority to continue the use of its prepetition bank accounts including the accounts at BBVA and Chase (the "**Banks**"), cash management systems, treasury management systems, or business forms (collectively, the "**Existing Accounts**").  Allowing the Debtor to continue to utilize the Existing Accounts post-petition will allow the Debtor to continue to receive payments on existing and new orders without interruption or delay.

Y.      Good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtor's estate.

Z.      The requirements of the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code, including without limitation Federal Rule of Bankruptcy Procedure 4001(d), have been satisfied for the Debtor's use of the Collateral and for the grant of adequate protection to BBVA upon the terms set forth in this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, as follows:

1.      The Motion is GRANTED, in part, on an interim basis on the terms set forth herein.  Nothing in this Order shall preclude the Court from entering a final order authorizing use of cash collateral with respect to the Motion (the "**Final Cash Collateral Order**").

2.      The Debtor shall have the authority to use the Cash Collateral including accounts receivable generated by the Debtor on a post-petition basis pursuant to the terms and limitations set forth in this Order and the budget attached hereto.  Notwithstanding § 552 of the Bankruptcy Code and pursuant to § 361 of the Bankruptcy Code, BBVA is granted a continuing post-petition lien and security interest in all property and categories of property of the Debtor in which and of the same priority as each held as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "**Post-Petition Collateral**"), equivalent to a lien granted under §§ 364(c)(2) and (3) of the Bankruptcy Code (the "**Adequate Protection Lien**").

3.      The Adequate Protection Lien is granted to the extent the BBVA Collateral is used by the Debtor and to the extent and with the same priority in the Debtor's Post-Petition Collateral, and the proceeds thereof, that BBVA held in the Debtor's pre-petition collateral.

7

4.      The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtor and BBVA to implement and perform the terms of this Order, and (b) the creation and perfection of all Liens granted by this Order.  The Debtor and BBVA shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect the Adequate Protection Lien, or to file UCC financing statements or other instruments with any other filing authority or take any other action to perfect the Adequate Protection Lien, which shall be and are deemed valid, binding, enforceable and automatically perfected upon entry of the First Interim Order.

5.      The Adequate Protection Lien shall be in addition to all security interests, liens and rights of set-off existing in favor of BBVA on the Petition Date.

6.      In addition, BBVA shall be entitled to continue to hold the BBVA Petition Funds until further order of the Court.  Any funds deposited into the Debtor's accounts at BBVA post-petition, shall be considered Cash Collateral and may be utilized the Debtor pursuant to the terms of this Order.

7.      The Debtor shall be authorized to use the Cash Collateral for its post-petition, necessary, actual, and reasonable operating expenses, as detailed in the budget attached hereto as **Exhibit A** (the "**Approved Budget**"), but only to the extent set forth in the Approved Budget provided, however, that the Debtor shall be considered in compliance with the Approved Budget as long as the Debtor does not exceed the Approved Budget by more than 10%  per line item.

8.      Unless authorized by order of this Court and only to the extent provided in the Approved Budget, the Debtor shall not use the Adequate Protection Collateral for payment of any expense of any affiliate of the Debtor and the Debtor shall not use Adequate Protection

Collateral for the payment of any pre-petition indebtedness or obligation of, or pre-petition claim

against, the Debtor.

9.     This Order is entered without prejudice to the claims, rights, and defenses that the

Debtor and/or any other party in interest may have to challenge the validity, priority or extent of

the liens asserted by BBVA and any and all claims, rights, and defenses BBVA may assert in any

action to challenge the validity, priority, or extent of the liens asserted.

10.     The Debtor is authorized to continue the use of prepetition bank accounts, cash

management systems, treasury management systems, or business forms, or any similar orders, to

the extent such use does not conflict with the use of the Cash Collateral use authorized by this

Order; otherwise, this Order is deemed to control.  In furtherance of the preceding sentence, with

respect to the Debtor's pre-petition checking, disbursement and/or operating account(s)

maintained at the Banks as of the Petition Date (the Existing Accounts), effective as of the time

of commencement of the Debtor's Chapter 11 case on the Petition Date:

       a.     the Debtor is authorized to maintain and continue to use the Existing

Accounts, to deposit funds into and withdraw funds from the Existing

Accounts by all usual means, including without limitation, checks, wire

transfers, automated transfers and other debits, and to treat the Existing

Accounts for all purposes as debtor-in-possession accounts;

       b.     Banks are authorized to maintain, service and administer the Existing

Accounts and any other accounts opened at the Banks subsequent to the

Petition Date in accordance with applicable non-bankruptcy law and the

service agreements and related documentation between the Debtor and to

9

enjoy the rights, benefits, Liens and privileges thereof, including without

limitation the right to charge treasury management fees, and the automatic

stay provisions of Bankruptcy Code § 362 are hereby modified for such

purposes;

c.     no check drawn or issued by the Debtor on the Existing Accounts prior the

Petition Date but presented for payment subsequent to the Petition Date

shall not be honored by the Banks unless specifically authorized by order

of the Court, and the Debtor shall make no request or demand of the

Banks for the withdrawal of funds from the Existing Accounts (whether

by checks, wire transfers, automated transfers or otherwise) for payment

of any pre-petition obligation, unless such has been authorized by order of

the Court, and the Banks shall have no liability to the Debtor, its estate

and/or its creditors to the extent that the Banks honors any request or

demand by the Debtor for the withdrawal of funds from the Existing

Accounts contrary to the provisions of this subparagraph, either (i) at the

direction of the Debtor upon which the Banks are authorized to rely

without further inquiry, (ii) in the good faith belief that the Court has

authorized same or (iii) inadvertently unless such inadvertence constitutes

gross negligence or willful misconduct on the part of the Banks.

11.    This Order shall remain in full force and effect until the earlier of the (a) entry of

an Order by the Court modifying the terms of this Order; (b) entry of an Order by the Court

terminating this Order for cause, including but not limited to breach of its terms and conditions;

10

(c) upon filing of a notice of default as provided in this Order; (d) the entry of a subsequent interim or final Order approving use of cash collateral; (e) the appointment of a trustee or examiner in this proceeding; (f) the dismissal or conversion of this Bankruptcy Case to a proceeding under chapter 7 of the Bankruptcy Code or (g) June _____, 2020 at _____.m.

12.     If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or Final Cash Collateral Order.  The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under chapter 7 of the Bankruptcy Code, the dismissal of this Bankruptcy Case, or confirmation of a Chapter 11 plan and notwithstanding anything to the contrary set forth in § 349(b)(3) of the Bankruptcy Code.  This Order shall be binding upon and inure to the benefit of the Debtor. The terms and provisions of this Order and any liens and claims granted or permitted by this Order, shall bind any subsequently appointed chapter 11 or chapter 7 trustee in this Bankruptcy Case under any provision of the Bankruptcy Code, which is an integral part of this Order.

13.     The Debtor shall serve notice of this Order on all parties entitled to receive the same pursuant to Federal Rules of Bankruptcy Procedure 1007 and 4001.

14.     Unless additional agreement for the interim or final use of cash collateral is reached by the parties, further hearing on this matter shall be held on June ____, 2020 at the United States Bankruptcy Court for the District of Utah at _____ _.m.

---END OF DOCUMENT---

14624780_v2

11

**Penumbra Brands**

| | 10-May-20 | 17-May-20 | 24-May-20 | 31-May-20 | 07-Jun-20 | 14-Jun-20 | 21-Jun-20 | 28-Jun-20 | 05-Jul-20 | 12-Jul-20 | 19-Jul-20 | 26-Jul-20 | 02-Aug-20 |
| Beginning Date | 16-May-20 | 23-May-20 | 30-May-20 | 06-Jun-20 | 13-Jun-20 | 20-Jun-20 | 27-Jun-20 | 04-Jul-20 | 11-Jul-20 | 18-Jul-20 | 25-Jul-20 | 01-Aug-20 | 08-Aug-20 |
| Week End Date | | | | | | | | | | | | | |
| **Cash Movement** | | | | | | | | | | | | | |
| **Operating Inflows** | | | | | | | | | | | | | |
| Online Sales- Sweep from merchant accounts | - | - | 225,000 | - | - | - | - | 225,000 | - | - | - | 225,000 | - |
| A/R Receipts- Amazon | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| A/R Receipts- Brightstar | - | - | - | - | - | - | 45,450 | - | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| A/R Receipts- Ice Mobility | - | - | - | 10,250 | 3,937 | 1,626 | 11,210 | 43,240 | 17,000 | 17,000 | 17,000 | 163,050 | 17,000 |
| A/R Receipts- Tessco | 36,748 | 10,725 | 107,450 | 22,317 | 9,985 | 50,952 | 43,100 | 28,957 | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| A/R Receipts- VoiceComm | - | - | 215,752 | 116,263 | 62,836 | - | 168,894 | - | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| A/R Receipts- Other | 1,230 | 6,673 | 595 | - | - | 16 | 7,118 | 26,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| **Total Operating Inflows*** | 38,478 | 17,898 | 549,297 | 149,330 | 77,258 | 53,094 | 276,272 | 323,697 | 175,500 | 175,500 | 175,500 | 546,550 | 175,500 |
| **Operating Outflows** | | | | | | | | | | | | | |
| Payroll | - | 150,000 | - | 225,000 | - | 75,000 | - | 150,000 | - | - | 150,000 | - | 150,000 |
| Operations | 273,000* | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 |
| Marketing & Sales | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Research & Development | - | - | - | 3,233 | - | - | - | 3,233 | - | - | - | 3,233 | - |
| Legal & Professional Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Rent & Facilities | - | 1,800 | 22,874 | 1,100 | - | 1,800 | 20,575 | 1,100 | - | 1,800 | 22,874 | - | 1,100 |
| Office Expense | - | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| IT & Computers | - | - | 6,200 | - | - | 6,200 | - | - | 6,200 | - | - | 6,200 | - |
| Company Credit Cards | - | - | - | 50,000 | 100,000 | - | - | 50,000 | 100,000 | - | - | 50,000 | 100,000 |
| Fees & Taxes | - | 2,000 | - | - | 500 | 2,000 | - | - | 500 | 2,000 | - | - | - |
| Other Expenses | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Outflows** | 273,000 | 249,400 | 124,674 | 374,933 | 196,100 | 180,600 | 116,175 | 299,933 | 202,300 | 99,400 | 268,474 | 155,033 | 346,700 |
| **Net Cash Flow** | (234,522) | (231,502) | 424,623 | (225,603) | (118,842) | (127,507) | 160,097 | 23,765 | (26,800) | 76,100 | (92,974) | 391,518 | (171,200) |
| | | | | | | | | | | | | | |
| **Cash Accounts** | | | | | | | | | | | | | |
| **Operating Account** | | | | | | | | | | | | | |
| **Ending Balance Operating Account** | 338,591 | 107,088 | 531,711 | 306,109 | 187,267 | 59,760 | 219,857 | 243,622 | 216,822 | 292,922 | 199,948 | 591,465 | 420,265 |
| | | | | | | | | | | | | | |
| **Claims Processing Account** | | | | | | | | | | | | | |
| **Ending Balance Claims Processing Account** | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 | 84,710 |
| | | | | | | | | | | | | | |
| **Merchant Account** | | | | | | | | | | | | | |
| **Ending Balance Merchant Account** | 97,166 | 137,166 | 17,166 | 45,166 | 85,166 | 125,166 | 165,166 | 33,166 | 73,166 | 113,166 | 153,166 | 21,166 | 61,166 |
| | | | | | | | | | | | | | |
| **Reserve Account** | | | | | | | | | | | | | |
| **Ending Balance Reserve Account** | 1,861,311 | 1,861,311 | 1,861,311 | 1,861,911 | 1,861,911 | 1,861,911 | 1,861,911 | 1,862,511 | 1,862,511 | 1,862,511 | 1,862,511 | 1,863,111 | 1,863,111 |
| **Operating + Reserve + Merchant accounts** | 2,297,068 | 2,105,565 | 2,410,188 | 2,213,186 | 2,134,344 | 2,046,837 | 2,246,934 | 2,139,299 | 2,152,499 | 2,268,599 | 2,215,625 | 2,475,742 | 2,344,542 |

*This Operations expense assumes the Court grants the Debtor's proposed Motion to Pay Critical Vendors and that Penumbra pays the full amounts identified in the Motion.



EXHIBIT A